1
2
3
4
5
6
7

8                        **UNITED STATES DISTRICT COURT**

9                        **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CARLOS M. ROSALES and GLORIA S.                 CASE NO. 09cv39 WQH (AJB)
     ROSALES,
12                                                   **ORDER**
                                   Plaintiffs,
13          vs.

     DOWNEY SAVINGS & LOAN
14   ASSOCIATION, F.A., a California
     corporation; et al,
15
                                   Defendants.
16

17   HAYES, Judge:

18          The matter before the Court is the Motion to Dismiss (Doc. # 4) filed by Defendant U.S.

     Bank National Association.
19
                                        **Background**
20
            On October 27, 2008, Plaintiffs initiated this action by filing a Complaint in the
21
     Superior Court of California, County of San Diego. *Not. of Removal*, p. 2.  On January 12,
22
     2009, Defendants removed the Complaint to this Court (Doc. # 1).
23
     A.     Factual Allegations in the Complaint
24
            Plaintiffs own real property in Chula Vista, CA (the "Property").   On June 16, 2006,
25
     Plaintiffs refinanced the Property with Defendant Downey Savings and Loan Association, F.A.
26
     ("Downey").   Downey "aggressively was marketing its payment option adjustable rate
27
     mortgage ('Option ARM')", which is a complicated loan product that "was very difficult to
28
     understand because of the double talk and misleading and deceptive language." *Complaint,*

                                            - 1 -

¶ 12.  "Plaintiff was told that the loan would be a fixed rate of 6% which at the time of closing was 7.107% and when she protested about the change of rate, Defendant told them to focus on the payment of $1,397.32 which was based on the teaser rate of 1.374%.  No further explanations were given [] at the time of signing the loan documents." *Id.,* ¶ 13.  "When Defendants made the above alleged representations to Plaintiff, they knew them to be false and made the representations with the intention to deceive and defraud Plaintiff and to induce Plaintiff to act in reliance on these representations in the manner alleged, or with the expectation that Plaintiff would so act." *Id.*

The interest rate "went up from 1.375% to the maximum 10.950% in the second month." *Id.,* ¶ 14.  When the one month Option ARM expired, "the loan immediately became an Adjustable rate loan." *Id.,* ¶ 15.  "Unlike most adjustable rate loans, where the rate can only change once [e]very year or every six months, the interest rate on the Defendant's Option ARM changed every month." *Id.*

Plaintiffs had several payment options during the 30-year life of the loan.  The "minimum" payment option was based on the introductory interest rate of 1.375%, which was "substantially less than the interest accruing on the loan." *Id.,* ¶¶ 16, 17.  However, "the loan balance on Plaintiffs' Option ARM also has a negative amortization cap buried in the fine print of 115% of the original principal of the loan.  If the balance hits the cap, the monthly payment is immediately raised to the fully amortizing level . . . .  When that happened, Plaintiff experienced significant 'payment shock.'" *Id.,* ¶ 18.  Plaintiffs had the option of making an interest-only payment instead of making the minimum payment because of their limited income.  Alternatively, Plaintiffs "could choose to make a fully amortizing principal and interest payment based on either a 15-year or a 30-year term which was out of the question in view of Plaintiffs limited resources." *Id.,* ¶ 19.  Plaintiffs could not make the payments because the "negative amortization was so high." *Id.,* ¶ 26.  "Notwithstanding the refinance, negative amortization continued causing the loan to be recast with monthly payments exceeding Plaintiffs' income. [Downey] promised Plaintiffs that they could refinance again in a few months to make their payments affordable." *Id.*

As part of the loan package on the Option ARM described above, Defendants purportedly prepared and tendered to Gloria S. Rosales and Carlos M. Rosales, a single man, Husband and Wife, as Trustor, a Deed of Trust dated June 16, 2006, encumbering the Subject Property recorded on June 22, 2006, as Instrument Number 2006-0443678 of Official Records in the Office of the County Recorder of San Diego County.

*Id.,* ¶ 30.

Downey "and the brokers it accepted as 'business partners' misrepresented or obfuscated the true terms of the Option ARMs offered by [Downey]." *Id.,* ¶ 24. Downey "and its business partner brokers also misrepresented or obfuscated how difficult it might be for borrowers to refinance an Option ARM loan." *Id.,* ¶ 25. Defendants "knew, or should have known" that Plaintiffs could never pay the loans according to their terms; "[t]he subject loan transaction was economically impossible from [its] inception." *Id.,* ¶ 27.

B.    Claims for Relief

First Cause of Action: Quiet Title (Against All Defendants)

Plaintiffs allege that the recordation of the Deed of Trust "was wrongful and should be voided by virtue of Defendants' fraudulent conduct alleged in this complaint." *Id.,* ¶ 32. Plaintiffs "seek[] to quiet title in the Subject Property as to each Defendant" on grounds that "each such Defendant has no right, title, estate, lien, or interest in the Subject Property." *Id.,* ¶ 33.

Second Cause of Action: Injunctive Relief (Against All Defendants)

Plaintiffs request that Defendants "be enjoined from in any way proceeding with foreclosure or removing, evicting, or in any way interfering with Plaintiffs' quiet and exclusive possession and occupancy of the Subject Property whether by private power of sale, an unlawful detainer court action, or otherwise." *Id.,* ¶ 35.

Third Cause of Action: Fraud (Against All Defendants)

Plaintiffs allege that Defendants knew or should have known at the time the loan documents were prepared and tendered that it was not possible for Plaintiffs to pay the loan; that the worse the loan, the more money Defendants made; and that the loan was unconscionable. Plaintiffs allege that nevertheless, Defendants knowingly and falsely represented that the loan was viable and that Plaintiffs could make the payments. Plaintiffs

allege that "[i]n reasonable reliance on these representations, Plaintiffs [were] induced to and did sign loan documents." *Id.,* ¶ 40.  Plaintiffs allege that "[a]s a proximate result of the fraudulent conduct of Defendants," Plaintiffs "signed loan documents purportedly transferring a security interest in their home that were unrealistic, unreasonable and oppressive for persons in Plaintiff's position thereby causing Plaintiffs damages." *Id.,* ¶ 41.

> Fourth Cause of Action: Negligent Infliction of Emotional Distress (Against All Defendants)

Plaintiffs allege that "Plaintiffs were financially unsophisticated and vulnerable to the importunities of Defendants who falsely represented themselves as reputable Mortgage Lenders, this relationship giving rise Defendants' duty to exercise due care towards Plaintiffs;" that Defendants' conduct breached their duty of care; and that "[a]s a proximate result of said breach of duty . . . Plaintiffs suffered severe emotional distress and mental suffering." *Id.,* ¶ 45.

> Fifth Cause of Action: Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act (Against All Defendants)

Plaintiffs allege that Defendants "engaged in the formulation and continued operation of a conspiracy with each other to obtain monies from Plaintiffs and other real property owners" through establishing policies that induce real property owners to execute false loan documents, promissory notes, and deeds of trusts. *Id.,* ¶ 53.  Plaintiffs allege that "all of said Defendants shared a common purpose." *Id.,* ¶ 55.  Plaintiffs allege that "each Defendant was associated with the functioning of the enterprise," and that "each Defendant conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs . . . through a pattern of racketeering activities." *Id.,* ¶¶ 57-58.

> Sixth Cause of Action: Violations of the Federal Truth-In-Lending Act (Against All Defendants)

Plaintiffs allege that Defendants "entered into a consumer credit transaction wherein said Defendants extended to Plaintiffs consumer credit in the form of a loan which was subject to a finance charge," and that as part of the loan, "Defendants obtained a security interest in

the Subject Property through a Deed of Trust." *Id.,* ¶¶ 65-66.  Plaintiffs allege that Defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. section 1635(a) and Regulation Z section 226.23(b), by failing to "properly deliver proper TILA Disclosures thereby tolling Plaintiffs right to rescind the loan." *Id.,* ¶ 68.

> Seventh Cause of Action: Violation of Real Estate Settlement and Procedures Act (Against All Defendants)

> Plaintiffs allege that Defendants "regularly serviced consumer loans subject to" the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. section 2601, *et seq.,* and "entered into a consumer loan transaction and obatined a security interest in the Subject Property by virtue of the Deed of Trust." *Id.,* ¶¶ 75-76.  Plaintiffs allege that Defendants violated RESPA "by unnecessarily driving up settlement costs, by failing to disclose business relationships between service providers, by failing to properly follow notice of transfer provisions, by failing to properly inform Plaintiffs about all closing costs." *Id.,* ¶ 78.

> Eighth Cause of Action: For Cancellation Based on Fraud and Impossibility of Performance (Against all Defendants)

> Plaintiffs state:

>> Because Plaintiffs lacked ability to perform the loan as alleged herein and Defendants fabricated and submitted falsified loan application documents, any loan contracts or Promissory Notes entered into are null and void from their inception based on impossibility of performance, a material and substantial circumstance Defendants in fact created at time of contract.

*Id.,* ¶ 82.  Plaintiffs "seek to cancel the subject Note of the Deed of Trust" because "the loan contracts and Promissory Notes are null and void." *Id.,* ¶ 83.

C.   <u>Procedural History</u>

> On January 20, 2009, Defendant U.S. Bank National Association ("US Bank") filed the Motion to Dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On February 12, 2009, US Bank filed a Reply in Support of the Motion to Dismiss (Doc. # 4).  Plaintiffs have not filed an opposition to the Motion to Dismiss.

**<u>Standard of Review</u>**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings.  *See De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).  A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level.  *See Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief.  *See id.* (citing Fed R. Civ. P. 8(a)(2)).  In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom.  *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996).

**<u>Analysis</u>**

A.    Cause of Action for Quiet Title

Defendants contend that "[u]nder California law Plaintiffs cannot properly allege a quiet title claim unless they tender all amounts due because a plaintiff may not quiet title without discharging the debt." *Mot. to Dismiss,* p. 2 (internal quotations omitted).  Defendants contend that Plaintiffs "have failed to allege the necessary elements to support a quiet title cause of action" because the Complaint does not allege "the date of which the determination is sought." *Id.* at 3.

To state a claim to quiet title, a complaint must be verified and include (1) a legal description of the property and its street address or common designation, (2) the title of the plaintiff and the basis of the title, (3) the adverse claims to the title of the plaintiff, (4) the date as of which the determination is sought, and (5) a prayer for the determination of the title of the plaintiff against the adverse claims.  Cal. Civ. Pro. § 761.020.

The Complaint does not identify the date as of which the determination is sought, or specify which of the several Defendants named in this action are asserting an adverse claim to the Property.  Furthermore, the Complaint is not verified.  The Court concludes that the

1  Complaint fails to state a claim for quiet title.

2  B.    Cause of Action for Injunctive Relief

3       Defendants contend that an injunction is an equitable form of relief, not an independent

4  cause of action.  Defendants contend that there is no ground for injunctive relief because the

5  "remainder of Plaintiffs' claims fail." *Mot. to Dismiss,* p. 3.

6       A cause of action is moot when the plaintiffs are no longer in a position to be harmed

7  by the behavior underlying the claim.  *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045,

8  1056 (9th Cir. 2002).  A suit for injunctive relief is normally moot upon the termination of the

9  conduct at issue, unless there is a likelihood of recurrence.  *Demery v. Arpaio,* 378 F.3d 1020,

10 1026 (9th Cir. 2004).

11      The Court takes judicial notice of the of the Trustee's Deed Upon Sale of the Property,

12 dated January 16, 2009, pursuant to Rule 201 of the Federal Rules of Evidence.  *See Mot. to*

13 *Dismiss,* Exhibit A.  Plaintiffs request that the Court enjoin Defendants from foreclosing on

14 the Property.  However, Plaintiffs' request for injunctive relief is moot because the foreclosure

15 sale of the Property occurred on January 16, 2009, and Plaintiffs do not allege that there is a

16 likelihood of recurrence.  The Court concludes that the Complaint fails to state a claim for

17 injunctive relief.

18 C.    Cause of Action for Fraud

19      Defendants contend that "Plaintiffs generally aver that 'Defendants' made certain

20 'representations to Plaintiffs,' but Plaintiffs do not set forth the representations made by U.S.

21 Bank, or what (if any) role U.S. Bank played in the 'fraud.'" *Mot. to Dismiss,* p. 3.  Defendants

22 state, "[f]or instance, Plaintiffs fail to allege whether it was U.S. Bank or another defendant

23 that represented to Plaintiffs that 'the loan was viable and that Plaintiffs could in fact make the

24 payments.'" *Id.* at 4 (quoting *Complaint,* ¶ 38).  Defendants contend that the Complaint fails

25 to state a claim for fraud because Plaintiffs fail to provide notice of particular conduct that

26 allegedly constitutes the fraud.

27

28

To state a claim for fraud, the plaintiff must allege "a representation, usually of fact, which is false, knowledge of its falsity, intent to defraud, justifiable reliance on the misrepresentation, and damage resulting from that justifiable reliance." *Stansfield v. Starkey,* 220 Cal. App. 3d 59, 72-23 (1990).  Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Rule 9(b) requires that the pleader state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation.  *Id.*; *Sebastian International, Inc. v. Russolillo*, 128 F. Supp. 2d 630, 634-35 (C.D. Cal. 2001).  Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz,* 476 F.3d at 764-65.  "[T]he plaintiffs must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" *Id.* (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

The Complaint alleges that "Defendants" made certain misrepresentations to Plaintiffs. *Complaint,* ¶ 38.  However, the Complaint does not specify which Defendant made which misrepresentation.  The Court concludes that the Complaint fails to allege fraud with the requisite particularity because the Complaint fails to "identify the role of each defendant in the alleged fraudulent scheme." *Swartz,* 476 F.2d at 541.  The Court concludes that the Complaint fails to state a claim for fraud.

D.    Cause of Action for Negligent Infliction of Emotional Distress

Defendants contend that no California case has ever allowed recovery for emotional distress arising solely out of property damage, absent a threshold showing of a some preexisitng relationship or intentional tort. *Mot. to Dismiss,* p. 4.  Defendants contend that "Plaintiffs' conclusory allegations fail to establish the type of preexisting relationship recognized by California courts to support a negligent infliction of emotional distress claim." *Id.* at 5.  Defendants contend that Plaintiffs have "also failed to allege (other than in a

1    conclusory fashion) that they suffered any emotional distress." *Id.*

2        "No California case has allowed recovery for emotional distress arising solely out of

3    property damage, absent a threshold showing of some preexisting relationship or intentional

4    tort." *Cooper v. Superior Court,* 153 Cal. App. 3d 1008, 1013 (1984). The Court concludes

5    that the Complaint fails to allege sufficient facts to support a finding that the parties had a

6    preexisting relationship, and fails to allege facts to support the conclusory allegation that

7    Plaintiffs suffered emotional distress. The Court concludes that the Complaint fails to state a

8    claim for negligent infliction of emotional distress.

9    E.    Cause of Action for Violation of RICO

10       Defendants contend that Plaintiffs fail to identify which of the "three stand alone

11   subsections of section 1962" Defendants' conduct allegedly violated, which "does not meet

12   even the liberal notice pleading requirements of the Federal Rules of Civil Procedure." *Mot.*

13   *to Dismiss,* p. 6. Defendants contend that "Plaintiffs' RICO claim also fails because Plaintiffs

14   have not alleged any facts to support the underlying predicate acts." *Id.* Defendants contend

15   that Plaintiffs have pled no facts to demonstrate how Defendants allegedly committed the

16   crimes of mail fraud, wire fraud, and obstruction, "let alone met the heightened pleading

17   standard applicable to RICO claims founded on thee predicate acts of mail and wire fraud."

18   *Id.* at 6-7. Defendants contend that Plaintiffs have failed to sufficiently allege an injury

19   compensable under RICO because "Plaintiffs do not allege any concrete financial loss they

20   suffered, let alone a financial loss attributable to Defendants' alleged RICO violations." *Id.*

21   at 7.

22       To state a RICO claim, the plaintiff must allege the existence of an "enterprise" and the

23   connected "pattern of racketeering activity." 18 U.S.C. § 1962; *United States v. Turkette,* 452

24   U.S. 576, 582 (1981). "The Ninth Circuit has held that allegations of predicate acts under

25   RICO must comply with Rule 9(b)'s specificity requirements." *U.S. Concord, Inc. v. Harris*

26   *Graphics Corp.,* 757 F. Supp. 1053, 1061 (N.D. Cal. 1991) (citing *Schreiber Distributing Co.*

27   *v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1400-01) (9th Cir. 1986). A RICO plaintiff must

28   allege the time, place and manner of each act of fraud, and the role of each defendant in the

1  fraud. *Lancaster Community Hospital v. Antelope Valley Hospital Dist.,* 940 F.2d 397, 405

2  (9th Cir. 1991).

3       The Complaint does not identify which one of the three stand alone subsections of 18

4  U.S.C. 1692 Defendants allegedly violated.  The Complaint does not allege sufficient facts to

5  support  the conclusory allegations that Defendants committed mail fraud, wire fraud, and

6  obstruction of justice. *See Complaint,* ¶ 58.  Furthermore, the Complaint does not allege the

7  role of each Defendant in the allegedly unlawful acts that give rise to Plaintiffs' RICO claim.

8  The Court concludes that the Complaint fails to allege a RICO claim with the requisite

9  particularity.

10  F.     <u>Cause of Action for Violation of TILA</u>

11       Defendants contend that TILA requires that damages claims be brought within one year

12  of the date the loan transaction is consummated.  Defendants contend that "Plaintiffs'

13  Complaint alleges that the loan transaction at issue in this action was consummated on June

14  16, 2006, making Plaintiffs' deadline for commencing an action for damages under TILA June

15  16, 2007." *Mot. to Dismiss,* p. 8.  Defendants contend that a TILA rescission claim expired

16  three years after the date the loan transaction is consummated or upon the sale of the property,

17  whichever occurs first.  Defendants contend that "[p]ublic records also show that Plaintiffs'

18  property was sold at a foreclosure sale on January 16, 2009." *Id.*

19       Damages claims under TILA must be brought "within one year from the date of the

20  occurrence of the violation." 15 U.S.C. § 1640(e).  "[A]s a general rule the limitations period

21  starts at the consummation of the transaction." *King v. California,* 784 F.2d 910, 915 (9th Cir.

22  1986). Rescission claims under TILA "shall expire three years after the date of consummation

23  of the transaction or upon the sale of the property, whichever occurs first."  15 U.S.C. §

24  1635(f).

25       The Complaint alleges that the loan transaction was consummated on June 16, 2006,

26  making the deadline for commencing a damages action under TILA June 16, 2007.  Plaintiffs'

27  property was sold at foreclosure on January 16, 2009, which cut off Plaintiffs' right to

28  rescission under the TILA.  The Court notes that Complaint alleges that Defendants' failed "to

1  properly deliver proper TILA Disclosures thereby tolling Plaintiffs['] right to rescind the loan."

2  *Complaint,* ¶ 68.  However, aside from this conclusory allegation that Plaintiffs' right to

3  rescind the loan should be tolled, Plaintiffs do not explain why they are entitled to equitable

4  tolling of their TILA claims, or allege with any specificity the period that the statute of

5  limitations should be tolled.  The Court concludes that the Complaint fails to state a claim for

6  violation of TILA.

7  G.    Cause of Action for Violation of RESPA

8         Defendants contend that the statute of limitations for Plaintiffs' RESPA claim is one

9  year from the occurrence of the violation.  Defendants contend that Plaintiffs' RESPA claim

10 is time-barred because Plaintiffs allege that Defendants violated RESPA "in the course of the

11 transaction for the loan," and that the Plaintiffs allege that the loan was made on June 16, 2006.

12        The statute of limitations for a claim under 12 U.S.C. section 2607(a), which prohibits

13 the giving and accepting of kickbacks in real estate settlement services, is one year from the

14 occurrence of the violation.  12 U.S.C. § 2614.  Typically, in cases involving loan documents,

15 the statute of limitations begins to run when the documents are signed, unless evidence is

16 presented to override this assumption.  *Meyer v. Ameriquest Mtg. Co.,* 342 F.3d 899, 902 (9th

17 Cir. 2003).

18        The Complaint alleges that Defendants violated 12 U.S.C. 2607(a).  *Complaint,* ¶ 78.

19 The Complaint alleges that the loan was made on June 16, 2006, yet Plaintiffs did not file their

20 RESPA claim until October 27, 2008.  The Court concludes that Plaintiffs' RESPA claim is

21 time-barred because Plaintiffs did not file their claim until more than a year after the expiration

22 of the statutory period.  The Court concludes that the Complaint fails to state a claim for

23 violation of RESPA.

24 H.    Cause of Action for Fraud and Impossibility of Performance

25        Defendants contend that it appears in the cause of action for fraud and impossibility of

26 performance that "Plaintiffs are simply reasserting their claim for fraud."  *Mot. to Dismiss,* p.

27 10.  Defendants contend that "to the extent Plaintiffs claim their performance is somehow

28 excused by the doctrine of impossibility, they are sorely mistaken" because "[i]mpossiblity

1  excuses performance only when the thing to be done itself is impossible, not when the

2  promisor simply lacks the ability to perform." *Id.*

3       Impossibility of performance is an affirmative defense and the burden of proof in

4  establishing it rests on the party asserting the defense. *Hensler v. Los Angeles,* 124 Cal. App.

5  2d 71, 83 (1954).  The impossibility of performance defense "must attach to the nature of the

6  thing to be done and not to the inability of the obligor to do it. . . . [S]ubjective impossibility

7  [] does not excuse nonperformance." *Id.*

8       To the extent that Plaintiffs are seeking to recover on the basis that Defendants'

9  committed fraud, as previously discussed, the Complaint fails to state a claim for fraud.  To

10  the extent that Plaintiffs are seeking to recover pursuant to the doctrine of impossibility,

11  impossibility of performance is an affirmative defense, not a stand alone cause of action. *See*

12  *Hensler,* 124 Cal. App. at 83.  Furthermore, Plaintiffs have not satisfied their burden of

13  showing that performance of their loan obligations is objectively impossible.  The Court

14  concludes that the Complaint fails to state a claim for fraud and impossibility of performance.

15  **Conclusion**

16       The Motion to Dismiss (Doc. # 4) is **GRANTED**.  The above-captioned action is

17  **DISMISSED**.

18  DATED:  March 2, 2009

19  
20  **WILLIAM Q. HAYES**
United States District Judge

21
22
23
24
25
26
27
28